IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                         3:03cr76/LAC
                                            3:06cv29/LAC/MD

AMELIA STEWART

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255  (doc. 106).  The government has filed a response (doc. 109) and the defendant has filed a reply.  (Doc. 110).  Pursuant to court order the government filed a supplemental response (doc. 112) and the defendant filed a rebuttal to the supplemental response. (Doc. 115).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

## I.  BACKGROUND

Amelia  Stewart,  Gary  Glenn  Roley  and  Joseph  Roley  were  charged  in  a superseding indictment with conspiracy to manufacture, distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine. (Doc. 33).  Defendants Gary and Joseph Roley were each charged with additional charges relating to their possession of firearms.  Defendant Stewart, who was represented by

appointed counsel Kenneth Brooks, signed a plea and cooperation agreement on August 19, 2003.  (Doc. 46).   Pursuant to this agreement defendant admitted that she was involved in a conspiracy to manufacture a mixture or substance containing a detectable amount of methamphetamine, but acknowledged that "the actual amount for which the defendant will be held personable (sic) accountable will be determined by the court at the time of sentencing, under a preponderance of the evidence standard of proof."  (Doc. 46 at 2).[1] Defendant acknowledged that she was "waiving her right to have a jury determine the weight of the drugs involved by a standard of proof beyond a reasonable doubt."  (*Id.* at 3).

The plea agreement set forth the possible sentences Stewart faced depending on the quantity of drugs for which she was ultimately held accountable, less than 50 grams; more than 50 grams but less than 500 grams; or more than 500 grams.  (*Id.*)  Relevant to the defendant's ultimate sentence, the plea agreement provided that if defendant were held accountable for more than 500 grams of methamphetamine, she faced a mandatory minimum prison term of ten years and a maximum sentence of life imprisonment, a five year term of supervised release, a fine of $4,000,000.00 and a $100.00 special monetary assessment.  (*Id.*).  The plea agreement also contained provisions indicating that there have been no representations as to what type of sentence the defendant might receive, and providing defendant with the opportunity to cooperate with the government in exchange for a potential sentence reduction.  (Doc. 46 at 3, 6-7).

A Presentence Investigation Report ("PSR") was prepared in which defendant was held accountable for 520 grams of methamphetamine, which corresponded to a base offense level of 32.  She received a two level upward adjustment because the defendants possessed firearms in the location that methamphetamine was produced or stored during the course of the conspiracy.   An additional six level upward adjustment was applied

---

[1]The agreement emphasized three separate times that it was the role of the court to determine the weight of drugs attributable to the defendant by the preponderance of the evidence standard. (See also, doc. 46 at 2-3, ¶ 2b and 2c).  Other guidelines adjustments were not mentioned in the PSR.

pursuant to then- §2D1.1(b)(5)(c) because the offense conduct endangered a minor.[2] Defendant received a three level downward adjustment for acceptance of responsibility, yielding a total offense level of 37.  Defendant's criminal history category was II, and therefore the applicable sentencing guidelines range was 235 to 293 months.

Counsel filed an objection to the quantity of drugs attributed to the defendant, but this objection was overruled at sentencing after the court heard the testimony of agent Claude Cosey. (Doc. 92 at 15).  Defense counsel asked the court for leniency, requesting that it deviate from the guidelines in recognition of the assistance provided by the defendant in this case.  (*Id.*).  Counsel also noted the defendant's young age and her acceptance of responsibility. The government countered by saying that it had not filed a substantial assistance motion because although the defendant cooperated initially, she became re-involved in the conspiracy. (Doc. 92 at 16).  It acknowledged that she could be a candidate for a Rule 35 at a later time.[3]  The court sentenced defendant at the lowest end of the applicable guidelines range to a term of 235 months imprisonment, stating that this sentence met the "mandatory requirement of 120 months, but is at the low end of the guidelines" and finding that her "voluntary disclosure of the conspiracy was significant and useful," even if it did not warrant a 5K1 reduction.  (Doc. 92 at 16).   The court did not indicate that it felt constrained or frustrated by the then-mandatory guidelines range.

Defendant's attorney simultaneously filed a notice of appeal and a motion to withdraw as counsel of record, which was denied.  (Doc. 69, 70, 76).  Defendant filed a pro se motion to reduce or modify her sentence, which was denied due to the pending appeal. (Doc. 71, 72 & 77).  On appeal, defendant argued that the district court erred in relying on hearsay that lacked sufficient indicia of reliability in determining drug quantity.  (Doc. 105). The Eleventh Circuit found that there was no reversible error.  It noted that defendant had been given the opportunity to challenge the reliability of the hearsay statements before the trial court, but had failed to do so, and in light of this, the district court did not need to make

---

[2]Now section 2D1.1(b)(6)(c).

[3]No Rule 35 motion was ever filed.

an express finding of reliability.  (Doc. 105 at 4).   Defendant also challenged the district court's failure to make specific findings on her objections to the PSI, although the appellate court noted that she failed to object below to the factual bases about which she complained on appeal.  Because of this, and because the district court had addressed the single issue to which she objected, drug quantity, no reversible Rule 32 error was shown.  Her conviction and sentence were affirmed. Her petition for a writ of certiorari was denied. *Stewart v. United States*, ___ U.S. ___ 126 S.Ct. 80 (Mem.), 163 L.Ed.2d 101 (2005).

In the motion currently before the court defendant claims that counsel was constitutionally ineffective for multiple reasons, and that  the district court and appellate court "erred by misinterpreting the sentencing guidelines."  The government opposes the motion in its entirety.

## II.  LEGAL ANALYSIS

A.  General Legal Standard

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis

for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Generally, an allegation of misapplication of sentencing guidelines raises neither constitutional, jurisdictional, or fundamental error which would result in a complete miscarriage of justice. *See Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998) (citing cases); *United States v. Perez*, 952 F.2d 908, 910 (5th Cir. 1992).  Therefore, because of the narrow parameters of section 2255 review, and due to an available avenue of review through direct appeal, sentences imposed within statutory limits are generally insulated from section 2255 review.  *United States v. Frady*, 456 U.S. 152, 167-68, 102 S.Ct. 1584, 71 L.Ed.2d 816, 830 (1982); *Montemoino v. United States*, 68 F.3d 416, 417 (11th Cir. 1995); *Fernandez v. United States*, 941 F.2d 1488, 1494 (11th Cir. 1991).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  *Ferguson v. United States,* 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  *Lynn*, 365 F.3d at 1239.

B.  Ineffective assistance of counsel

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279,

1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000).  "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing  *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs.  466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992).  "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")).  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*,  466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003). (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).  Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

C.  Defendant's claims

    1.  Ineffective assistance of counsel

Defendant first claims that counsel was constitutionally ineffective when he did not object to her sentence being enhanced as a result of her criminal history since she was not notified in accordance with 21 U.S.C. § 851.  Defendant's argument is misguided as this statute was inapplicable to her case.  Title 21 U.S.C. § 851 pertains to *statutory enhancements* that are imposed as a result of prior convictions for felony drug offenses. The "enhancement" to which defendant refers was actually an ordinary part of guidelines calculations by which a defendant's criminal history category is determined based on prior convictions.  Although not necessarily relevant to the instant argument, the court notes that defendant's sentence was not technically affected by the fact that she had a prior conviction for possession of marijuana and possession of drug paraphernalia, as she received only one criminal history point for this conviction.  (PSR ¶ 91).  Rather, the fact that she was on probation for the prior offense at the time of the instant offense conduct resulted in the application of two additional criminal history points, which raised her criminal history category to II.  In any event, counsel was not ineffective for his failure to object to the lack of § 851 notice, given the inapplicability of this statute.

Defendant next contends that counsel was ineffective because he failed to object to "all" the enhancements.  As noted above, she received a two level upward adjustment pursuant to § 2D1.1(b)(1) for a co-defendant's possession of a weapon.  Co-defendant Joseph Roley pleaded guilty to a separate offense of using, carrying, or possessing a firearm during and in relation to a drug trafficking offense.  This adjustment may be applied when a co-conspirator, and not necessarily the defendant herself, has possessed a firearm.  Proper application of the enhancement requires the government to show by a preponderance of the evidence that: (1) the possessor of the firearm was a co-conspirator; (2) the possession was in furtherance of the conspiracy; (3) the defendant was a member of the conspiracy at the time of possession; and (4) the co-conspirator possession was reasonably foreseeable by the defendant. *United States v. Suarez*, 313 F.3d 1287, 1294 (11th Cir. 2002) (citing *United States v. Gallo*, 195 F.3d 1278, 1284 (11th Cir. 1999)).  Actual

knowledge of the co-conspirator's firearm possession by the convicted defendant is not required. *United States v. Alred*, 144 F.3d 1405 (11th Cir. 1998); *United States v. Martinez*, 924 F.2d 209, 210-11 & n. 1 (11th Cir. 1991) (per curiam).  And, application of the enhancement is proper unless it is clearly improbable that the possession of the weapon was relevant to the offense.  *See United States v. Novaton*, 271 F.3d 968, 1013, n.13 (11th Cir. 2001); *U.S. v. Audain*, 254 F.3d 1286, 1290 (11th Cir. 2001).  In this case, co-defendant Roley's guilty plea to using, carrying or possessing a firearm during and in relation to a drug trafficking offense is sufficient to warrant application of the enhancement.  Defendant has not provided any factual basis for an objection to the adjustment, and the court can discern none.   Therefore, her argument fails both prongs of the *Strickland* ineffective assistance of counsel test.

Defendant also received a six level adjustment pursuant to §2D1.1(b)(5)(c), because the offense involved the manufacture of methamphetamine and created a substantial risk of harm to the life of a minor.  As with the firearm adjustment, although she maintains that counsel should have objected, defendant has not suggested any factual arguments to show why this enhancement should not apply.  Even a single instance of a minor being present during a methamphetamine cook has been held to be sufficient to warrant application of this adjustment.  *United States v. Deffebo*, 169 Fed. Appx. 835, 2006 WL 535714 (5th Cir. 2006); *see also United States v. Siler*, 2006 WL 272688 (5th Cir. 2006) (enhancement proper when children present during cook); *United States v. Spencer*, 150 Fed.Appx. 901 (10th Cir. 2005) (risk of harm to one child was sufficient); *United States v. Bell*, 151 Fed. Appx. 216  (4th Cir. 2005) (enhancement was proper when defendant's one year old daughter resided in house where cooks took place).  Furthermore, "[a]lthough the district court is not required to identify a specific minor, it must still make a finding that the defendant's actions placed a minor at risk." *United States v. Florence*, 333 F.3d 1290, 1293 (11th Cir. 2003); *United States v. McLaughlin*, 141 Fed. Appx. 790 *2 (11th Cir. 2005) (neither the Guidelines nor any binding law require the defendant's knowledge of the presence of minors or that the court identify a specific minor at risk before imposing the enhancement.)  In this case, the PSR reflects that:

Gary Roley, Joseph Roley and Amelia Stewart have children who were living with them at the respective residences, which are also the same locations where anhydrous ammonia was possessed/stored and parts of the "cooks" took place. Although, there is little evidence the minor children were present and/or witnessed the "cooks" taking place, the fact they lived at these locations (residences) put them at substantial risk of harm. This harm was created not only by the "cooking" process, but by the mere presence and potential danger of anhydrous ammonia emission. An example of the harm which could have occurred is the fact Gary Roley received severe chemical burns over a portion of his body when anhydrous ammonia "spewed" from a tank.

(PSR ¶ 80).  These facts were certainly sufficient to support the application of the adjustment under applicable law, and defendant has shown neither deficient performance nor prejudice.

Defendant next contends that counsel was ineffective on appeal because he did not challenge all enhancements on appeal and he neglected to file an amendment to the appeal asking the court to apply *Booker*[4] to her case.  Having failed to show that counsel was ineffective for his failure to object to the enhancements before the trial court, defendant's claim that counsel was ineffective for failing to appeal the application of guidelines enhancements must fail.

Her *Booker* claim warrants some discussion. Defendant claims that after she became aware of the Supreme Court's ruling in *Booker*, she wrote a letter to counsel asking that he request that the Eleventh Circuit apply *Booker* to her case. In response, counsel sent her a letter on February 2, 2005 stating as follows:

I received your letter of January 1, 2005 requesting another addendum to your appellate brief using the *Booker/FanFan* decision.  I have already forwarded the information you requested to the Court concerning the weight issue and the matter is before the Court.

(Doc. 106, Exh. A).  She maintains that counsel did not do what she asked him to do, and consequently, when she filed a pro se petition for writ of certiorari to the Supreme Court, it was denied.

---

[4]*United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (Jan. 12, 2005).

The government argues that the timing of *Apprendi*,[5] *Blakely*[6] and *Booker* are instructive.  *Apprendi*, which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490, 120 S.Ct. at 2362-63, of course, was decided before defendant was sentenced.  The plea and cooperation agreement appears to have been drafted to avoid potential *Apprendi* based challenges. (Doc. 46 at 3, by signing agreement defendant "waiving her right to have a jury determine the weight of the drugs involved by a standard of proof beyond a reasonable doubt.").  *Blakely* and *Booker*, on the other hand, were decided while defendant's case was pending on appeal.[7]  In *Blakely*, the Supreme Court clarified that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.  See Ring* [*v. Arizona*, 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)] ("'the maximum he would receive if punished according to the facts reflected in the jury verdict alone'" (*quoting Apprendi, supra*, 503 U.S. at 483, 120 S.Ct. at 2348)) . . . .  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

124 S.Ct. at 2537-38 (emphasis in original, some citations omitted); *see also In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004) (quoting *Blakely*).

In *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court extended its holding in *Blakely* to the Sentencing Guidelines, holding that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial.  It excised two parts of the

---

[5]*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (June 26, 2000).

[6]*Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (June 24, 2004).

[7]The government's repeated assertion that *Booker* was decided "well after the Eleventh Circuit Court of Appeal decided in February 2005 to affirm [defendant's] conviction" and that counsel was unable to raise *Booker* before the Eleventh Circuit for that reason (doc. 108 at 13, 14, 18) is clearly mistaken.

Sentencing Reform Act to cure the constitutional defects: 18 U.S.C. § 3553(b)(1), which made the guidelines result binding on the sentencing court and § 3742(e), which required *de novo* review of sentences on appeal.  *Id.* at 764.

In its response, the government states that *Blakely* was decided during the pendency of the defendant's direct appeal, and maintains that defendant is incorrect in her representation that counsel did not raise *Blakely* before the appellate court.  The government cites an affidavit supplied by defense counsel in which he stated that he filed a notice to the Eleventh Circuit about this decision on October 19, 2004.  (Doc. 108 at 14, exh. 1 at 1-2).  This notice is not reflected on the docket sheet for defendant's appeal.  See http://pacer.ca11.uscourts.gov.  In fact, the appellate docket sheet reflects that nothing was filed after May 20, 2004 until the opinion was entered on February 14, 2005.  And, the appellate opinion made no mention of either a supplement or the *Blakely* decision.  Therefore, it appears that the "supplement" in question was never actually received by the Eleventh Circuit.

With respect to counsel's failure to raise *Booker*, the government repeatedly asserts that counsel was unable to do so because *Booker* was decided "well after the Eleventh Circuit Court of Appeal decided in February 2005 to affirm [defendant's] conviction." (Doc. 108 at 13, 14 n.4, 18).  The government's reliance on this assertion is clearly misplaced.  *Booker* was decided on January 12, 2005, before the Eleventh Circuit affirmed defendant's conviction and sentence.  Defendant wrote to her attorney asking that he raise *Booker* in the appellate court, although obviously not on the date reflected on counsel's letter to her,[8] and counsel indicated that he had "already forwarded the information" she requested to the court.  (Doc. 110, exh. A).  As noted above, there is no evidence on the appellate docket sheet that this was done.  Furthermore, defendant's failure to raise *Blakely* and *Booker* claims before the appellate court was relied upon by the government in its brief in opposition to defendant's petition for writ of certiorari to the Supreme Court.  (Doc. 110,

---

[8]Counsel indicates in his letter of February 2, 2005 that he had received defendant's letter of January 1, 2005 requesting another addendum to the appellate brief using the *Booker/FanFan* decision.  Clearly, because *Booker* was not decided until January 12, 2005, the date in counsel's letter is mistaken.

exh. 2 at 5, 9).  Thus, it appears that the government argued before the Supreme Court that this argument was waived for her failure to present it to the appellate court, while it now argues that counsel was not ineffective because a *Blakely* claim, at least, was presented.

Because of these incongruities in the record, the court required the government to file a supplemental brief addressing issues including but not limited to: (1) the content of the *Blakely* supplement purportedly filed with the Eleventh Circuit; (2) the effect of counsel's apparent failure to file the *Blakely* supplement on both her appeal and her petition for certiorari; (3) the effect of counsel's failure to timely raise *Booker* before the Eleventh Circuit on both defendant's appeal and her petition for certiorari; (4) the appropriate remedy due the defendant if counsel's performance is found to have been constitutionally ineffective.

In its supplemental response, the government states that there is no evidence on the docket sheet of the *Blakely* supplement because defense counsel's "notice to the court" was actually a letter sent directly to the clerk of court, and, it concedes, the letter was erroneously sent to the district court rather than the Eleventh Circuit Court of Appeal. (Doc. 112, exh. 1).[9]  This is of no consequence, it argues, because controlling case law would not have permitted a supplement raising a new issue for the first time.

In *United States v. Higdon*, 122 Fed. Appx. 985 (11th Cir. 2004), defendant appealed several criminal convictions.  During the pendency of this appeal, and after briefing had been completed, defendant moved to file a supplemental brief raising a *Blakely* claim.  This motion was denied, and defendant's convictions and sentence were affirmed.  *Higdon*, 122 Fed. Appx. 985.  He filed a petition for rehearing en banc based on the court's denial of his motion to supplement, which was denied in a published decision. *United States v. Higdon*, 418 F.3d 1136 (11th Cir. 2005).  In denying his petition for rehearing, the court noted that defendant had not challenged the constitutionality of any extra-verdict sentencing enhancement or asserted that the district court lacked the

---

[9]Counsel does not appear to have sent a separate notice regarding the *Booker* decision, as his correspondence to defendant suggests.

authority to impose the enhancements under a preponderance of the evidence standard in either the district court or in his initial brief on appeal, but had done so only in his motion to file a supplemental brief. *Id.* 418 F.3d at 1137. The court stated that it:

> has repeatedly followed the prudential rule that new issues not raised in opening briefs will not be considered by the court. See e.g., *United States v. Sears*, 411 F.3d 1240, 1241 (11th Cir. 2005); *United States v. Verbitskaya*, 406 F.3d 1324, 1339-40 (11th Cir. 2005); *United States v. Day*, 405 F.3d 1293, 1294 n. 1 (11th Cir. 2005); *United States v. Dockery*, 401 F.3d 1261 (11th Cir. 2005); *United States v. Ardley*, 273 F.3d 991, 991-95 (11th Cir. 2001) (Carnes, J., concurring in the denial of rehearing en banc) (collecting cases); *United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 2000). Thus, this Court, consistent with this rule, denied Higdon's motion and refused to consider his belated attempt to raise a *Blakely* issue in supplemental briefing.

*Id.*, 418 F.3d at 1137. The court further explained that in the event that new authority comes to light after a brief is filed, parties may submit supplemental authority on "intervening decisions or new developments" regarding issues already properly raised in the initial briefs, or they can seek permission to file supplemental briefs on this new authority. *Id.* 418 F.3d at 1137 n.2. (Citing *Nealy*, 232 F.3d at 830 (internal citations omitted)). However litigants cannot raise entirely new issues at supplemental briefing, even if the issues arise based on the intervening decisions or new developments cited in the supplemental authority. *Id.*

The court also noted that although it "does not consider *Booker*-type issues not raised in any way in a party's initial brief, we have liberally construed what it means to raise a *Booker*-type issue." *Id.* 418 F.3d at 1137 n.3 (citing *United States v. Dowling*, 403 F.3d 1242, 1246 (11th Cir. 2005) (evaluating whether a *Blakely/Booker* claim was made by reviewing whether a defendant: (1) referred to the Sixth Amendment; (2) referred to *Apprendi* or another related case; (3) asserted his right to have the jury decide the disputed fact; or (4) raised a challenge to the role of the judge as factfinder with respect to sentencing factors)).

The Supreme Court granted certiorari, vacated this opinion and remanded for further consideration in light of *Booker*. *Higdon v. United States*, 126 S.Ct. 83, 163 L.Ed.2d 32 (2005). On remand the Eleventh Circuit reinstated its opinion affirming defendant's

conviction and sentence, noting that it had recently denied the appeal of a defendant raising a *Booker* claim because he had failed to raise it either in the district court or in the initial brief.  *United States v. Higdon*, 159 Fed.Appx. 96 (11th Cir. 2005) (citing *United States v. Dockery*, 401 F.3d 1261 (11th Cir. 2005)).  Therefore, failure to raise a *Booker*, *Blakely* or related claim earlier is dispositive of a defendant's belated attempt to present such a claim for the first time in a supplemental brief.  *See also United States v. Alexis*, 146 Fed.Appx. 469 (11th Cir. 2005), *cert denied*, *Alexis v. United States,* 126 S.Ct. 1488 (2006); *United States v. Sears*, 411 F.3d 1240, 1241 (11th Cir. 2005); *United States v. Levy,* 416 F.3d 1273 (11th Cir. 2005).

In the case at bar, on appeal the defendant challenged the district court's reliance on hearsay for determining the quantity of drugs attributable to her and a co-defendant, and the court's alleged failure to make specific findings on the objections to the PSI.  There does not appear to have been any reference to the Sixth Amendment or *Apprendi*, or a challenge to the judge's role as fact-finder.  Rather, defendant merely challenged the type of evidence relied upon by the court.  Therefore, even had counsel moved for leave to file a supplemental brief based on either *Blakely* or *Booker*, such leave would not have been granted, and therefore, defendant has not shown prejudice.  Because of this, defendant likewise has not shown that counsel's alleged failing prejudiced her in that her writ of certiorari was denied.

To the extent defendant might wish to argue that counsel was ineffective in not raising *Blakely/Booker* issues at sentencing, such an argument also fails.  Trial counsel's failure to predict a change in the law does not constitute deficient performance.  *See United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (citing *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'") (citations to three other Eleventh Circuit decisions omitted); *Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997) ("[i]t was not professionally deficient for [counsel] to fail to anticipate that the law in Florida would be changed in the future to bar the admission of hypnotically induced testimony.") Pitts v.

Cook, 923 F.2d 1568, 1572-74 (11th Cir. 1991); *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n. 8 (11th Cir. 1986) ("defendants are not entitled to an attorney capable of foreseeing the future development of constitutional law")).  This is true even when the change is such that the forfeited issues was, in hindsight, a sure winner.  *Id.* (Citing *Wright v. Hopper*, 169 F.3d 695, 707-708 (11th Cir. 1999) (*Batson* issue); *Elledge v. Dugger*, 823 F.2d 1439, 1443 (11th Cir. 1987) (*Michigan v. Mosley* issue); *Thompson v. Wainwright*, 787 F.2d at 1459 n. 8 (*Ake* issue)).[10]

### 2. "Guidelines" claims

As her second ground for relief, the defendant contends that the district court and appellate court erred by "misinterpreting" the sentencing guidelines. The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Rowan*, 663 F.2d

---

[10]The irony, and potential inequity of this position does not escape the court.  Neither *Booker* nor *Blakely* applies retroactively to cases on collateral review.   *Varela v. United States*, 400 F.3d 864, 866-868 (11th Cir.), cert. denied, 126 S.Ct. 312, 163 L.Ed.2d 269 (2005); see also *In re Anderson*, 396 F.3d 1336 (11th Cir. 2005) (holding that only the Supreme Court can make a new rule retroactive on collateral review, and that it must do so explicitly); *Bey v. United States*, 399 F.3d 1266, 1269 (10th Cir. 2005) ("Booker may not be applied retroactively to second or successive habeas petitions."); *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005) ("[W]e conclude that Booker's rule does not apply retroactively in collateral proceedings...."); *Green v. United States*, 397 F.3d 101, 103 (2nd Cir. 2005) (per curiam) ("[N]either *Booker* nor *Blakely [v. Washington*, 542 U.S. ----, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004),] apply retroactively to Green's collateral challenge."); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) ("*Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005."); *Cirilo-Munoz v. United States,* 404 F.3d 527, 533 (1st Cir. 2005) (it is unlikely that the Supreme Court will adopt a retroactivity analysis that opens up to required reexamination practically all of the federal sentences imposed since the guidelines went into effect in 1987).  Therefore, in order for a defendant whose case was pending on appeal when *Blakely* or *Booker* was decided to have benefitted from those cases, counsel would essentially have to have anticipated a change in the law, which is not constitutionally required under *Strickland*.  And, even if the issue were raised for the first time in the initial brief, it would have been subjected to the more stringent plain error review.   *United States v. Underwood*, 446 F.3d 1340, 1343 (11th Cir. 2006) (defendant who was sentenced at the low end of the guidelines could not, without more, establish that his "substantial rights" had been affected because court applied guidelines in mandatory fashion); see also *United States v. Fields*, 408 F.3d 1356, 1361 (11th Cir. 2005); *United States v. Matute-Santos*, 168 Fed. Appx. 343, 348 (11th Cir. 2006).  Given the facts of this case, it does not appear such an argument would have succeeded under controlling law.  *See Underwood, supra; Fields, supra; Matute-Santos, supra.*

1034, 1035 (11th Cir. 1981).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted).   Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn,* 365 F.3d at 1234; *Bousley,* 118 S.Ct. at 1611 (citations omitted).   To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).   Defendant's argument is subdivided into several parts, any of which could have been raised on direct appeal. Because defendant raised an ineffective assistance of counsel claim as part of her motion, affording her the deference accorded to pro se litigants, the court will read defendant's claim 2 as incorporating an ineffective assistance of counsel claim.

First, defendant contends that her sentence was a "miscarriage of justice."  The basis for this contention appears to be defendant's complaint that she was not found guilty by a jury beyond a reasonable doubt.  However, in entering her guilty plea, the defendant expressly waived the right to be found guilty by a jury beyond a reasonable doubt. At the rearraignment proceeding, the court inquired whether she and the other co-defendants

understood their rights, including the right to make the government prove their guilt to a jury beyond a reasonable doubt.  (Doc. 56 at 12).  Defendant indicated that she understood that, had discussed her rights with her attorney, had no questions about her rights and understood that by entering a plea she would waive or give up those rights.  (Doc. 56 at 12-13).  Her claim that her conviction was a miscarriage of justice or a violation of due process because she was not found guilty by a jury is utterly without foundation.  Counsel could not have affected the outcome of the case by raising such a claim, either before the district court or on appeal, and she is not entitled to relief.

Next, defendant claims that her sentence was unconstitutional.  Here, she attempts to bring a belated claim under *Blakely* and *Booker*.  She argues that because of the guidelines adjustments, her sentence was enhanced based on judge-made findings that "impermissibly superseded the scope of the indictment and the findings of the petit jury."[11] As noted above, *Blakely* and *Booker* are not retroactive on collateral review, and therefore, her argument, even if it had some basis in fact, must fail.  See *Varela*, 400 F.3d at 866-868 and cases cited in note 10, *supra*.

In the same vein, defendant maintains that her sentence constitutes a structural error, that is, a violation of the right not to be sentenced for a crime that was not charged in the indictment and not proved beyond a reasonable doubt, again referring to the enhancements, and alleged *Apprendi* error.  In *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir.), *cert. denied*, --- U.S. —, 125 S.Ct. 2935, 162 L.Ed.2d 866 (2005), the Eleventh Circuit stated that "the decisive factor that makes pre-*Booker* sentencing problematic is not extra-verdict enhancements, but their use in a mandatory guidelines system." See also *United States v. Chau*, 426 F.3d 1318 (11th Cir. 2006) ( if a district court applies guidelines as advisory, nothing in *Booker* prohibits the district court from making, under a preponderance of the evidence standard, additional factual findings that go beyond a defendant's sentence.)  Thus, there was no error in the court's determination beyond a reasonable doubt that certain guidelines enhancements applied, and she is not entitled to relief.

---

[11]Clearly, this language was borrowed from another source, as there was no petit jury in defendant's case due to her guilty plea.  Also, language in the same paragraph refers to a male defendant.

3. <u>Claims raised in defendant's rebuttal memorandum</u>

In her rebuttal to the government's supplemental response, defendant requests that she be allowed to add an additional claim of ineffective assistance of counsel, that is, that counsel told her she would receive a sentence of five years if she entered into the plea agreement. (Doc. 115 at 3). Even if the court were inclined to allow it, this claim is refuted by the language of the plea agreement itself, which states that there were "no representations as to what type of sentence the defendant may receive." (Doc. 48 at 3). Furthermore, at the rearraignment, the defendant indicated that she understood that counsel could not tell her what the actual sentence would be, because it could only be determined after the probation officer completes the PSR. (Doc. 56 at 23).

Defendant also claims in her rebuttal that counsel should have investigated her learning disability and her abusive past, and should have had her evaluated to determine whether or not she really comprehended the plea agreement and whether or not she comprehended what was actually taking place as she was reporting the drug manufacturing. She claims that she does not comprehend the events of this court's proceedings, and has only been able to file and pursue the instant motion with the assistance of acquaintances. (Doc. 115 at 4). At rearraignment, the defendant informed the court that she graduated from high school and took three years of vocational school to be a welder. (Doc. 56 at 9).[12] She indicated that she had no problem understanding what the court was saying or what had been said so far. (*Id.*) She also indicated she had discussed her rights with her attorney, that she understood the rights she had and the rights she would be giving up by entering a plea of guilty, that she understood the facts presented by Agent Cosey and that they were true and correct, that she understood the potential penalties she faced and the operation of the sentencing guidelines, that she had reviewed the plea agreement in detail with counsel including the provisions regarding cooperation and the fact that the agreement could not be revoked if defendant was

---

[12]The rearraignment transcript erroneously attributes these responses to J. Roley instead of defendant Amelia Stewart. (Doc. 56 at 8-10). Likewise, the responses of defendant G. Roley are also attributed to J. Roley. (Doc. 56 at 10-12).

unhappy with her sentence (*Id.* at 12, 14, 18, 21, 25-27). Counsel certified to the court that he had reviewed the agreement with his client, that she understood it and appreciated the consequences of entering into it. (*Id.* at 25). At no point did defendant ask to speak to her attorney, express any confusion about what was going on during the rearraignment.

With respect to her education, defendant's PSR reflects that she was making passing grades in mainstream classes, but pursued an Exceptional Student Education ("ESE") diploma when she was unable to pass the High School Competency Test. (PSR ¶ 112). She also took welding classes for three years, but "was unable to receive a welding certificate as she could not pass the comprehensive examination." (PSR ¶ 113). These facts, along with the vague allegation that defendant was "abused throughout her life" does not invalidate her plea and sentence.[13] There was abundant evidence against her, including the likely testimony of the other two charged co-conspirators who could have testified against her. If convicted after a trial, she could have faced a significantly lengthier sentence, as she would not have been entitled to a reduction for acceptance of responsibility.[14]

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 106) be DENIED.

At Pensacola, Florida, this 21st day of June, 2006.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

---

[13]Defendant has offered no factual detail about the alleged abuse she suffered and how it affected her case. To the extent she claims that she was a victim of battered women's syndrom, she has not presented evidence or legal authority that such a defense either existed or was applicable in her case. *Moran v. Ohio*, 469 U.S. 948, 950 n. 2, 105 S.Ct. 350, 83 L.Ed.2d 285 (1984) (describing Battered Women's Syndrome and its acceptance as a legal theory of self-defense testimony).

[14]Assuming that the facts as set forth in the PSR otherwise remained the same, without the three level adjustment defendant's guidelines range would have been 324 to 405 months.

## <u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).